RUSSELL, Judge.
This child custody case originated with a petition filed by the Houston County Department of Human Resources (DHR) on July 20, 1988. Temporary custody of N.J.C. (child), who was born on February 15, 1988, was granted to DHR pending a final hearing. At the final hearing on September 14, 1988, the child was adjudicated dependent by agreement of the parties, and the court ordered that custody was to remain with DHR.
On July 31, 1989, DHR filed a motion with the court to “allow the department to show cause why custody of said child should be continued with the Department of Human Resources.” T.M.T. (mother), J.E.C., Jr. (father), and J.E.C., Sr. and T.C., paternal grandparents (grandparents), petitioned for custody of the child. On March 7, 1990, the trial court granted legal custody of the child to the grandparents, pending further order of the court, and subsequently ordered that the previous visitation rights of the mother would not be diminished. The father appeals. We reverse and remand.
Initially, we note that child custody and visitation rights are matters which are within the discretion of the trial court and that the exercise of that discretion will be reversed only for abuse or plain error. Hutchinson v. Davis, 435 So.2d 1303 (Ala.Civ.App.1983).
The dispositive issue is whether the trial court erred to reversal by granting custody to the grandparents and denying custody and visitation to the father.
The record indicates that DHR originally petitioned the court as a result of physical abuse of the child by the mother. At that time the child was living with the mother, and the father, who was in high school, was living with his parents, the paternal grandparents, in Century, Florida. Although the father petitioned for custody of the child, the court first granted temporary custody to DHR and then, on agreement of the parties, adjudicated the child dependent and continued custody with DHR. DHR then granted physical custody of the child to the grandparents.
The father and the child lived together in the grandparents’ home part of the time that the child was in the physical custody of the grandparents. The father has married and presently lives one mile away from the grandparents. The child has spent quite a bit of time with the father and his wife, but has spent most nights with the grandparents. At the time of the hearing, the father and his wife were expecting a child in the next two weeks.
The father is employed with his father’s company and is learning the business. Testimony indicates that the father does not drink and that he sometimes attends church. The father testified that he and his wife care for the child a great deal and that they want to give him a stable home without the child going back and forth so much so that the child can learn to sleep in a bed by himself, be weaned from the bottle, and be potty trained.
*594 After the hearing on temporary custody, the mother was placed at Charter Woods Hospital for treatment for emotional problems and later was placed at the Girls Attention Home and enrolled in school. At the request of DHR, the mother attended parenting classes and counseling sessions and completed high school. She has expressed an interest in attending college, but has not been able to work out the details.
The mother has been living at the home of her grandmother. She also has spent a great deal of time at the home of a man whom she had planned to marry, but she now has no such plans. She is not employed and is dependent on relatives and her boyfriend for support.
The mother was allowed visitation with the child, which increased from several hours at the grandparents’ home to alternate weeks spent away from the grandparents. Although the mother petitioned for custody, she does not appeal the decision of the trial court granting custody to the grandparents.
The grandfather testified that the grandparents are 54 years old and that, although he intended to pursue custody if his son was not awarded custody, it would be in the child’s best interest to be placed with the father. This was due to the father’s age, his love for his son, and the fact that he could give the child everything that he needed. The grandfather also testified that the father did a good job working for him and that the father and his wife have an excellent relationship with the child.
DHR recommended that the child be placed in the custody of one of the parents, with the other parent having visitation every other weekend. The Florida Department of Health and Rehabilitative Services (Florida Department) reported on the homes of the grandparents and the father. It recommended that, although the grandparents’ home is certainly suitable for the child, custody of the child be placed with the father.
The trial court, in addition to granting custody to the grandparents, granted visitation to the mother, which, by stating that the previous visitation rights of the mother shall not be diminished, in effect, gives her every other week with the child. The judgment of the trial court is silent as to the visitation rights of the father. The court also stated that, in its opinion, neither parent had shown the ability to provide for the needs of the child and that the mother did not live in a stable environment and had not obtained a steady job or provided for her education. As to the mother, we agree.
The court further stated that the father had not “addressed his own problems of inability to communicate with [the mother] or his present wife in regard to custody or handling of the child and visitation. The child had only stayed overnight with the natural father a total of ten (10) nights in approximately eight months even though the child was physically located less than a mile away from him and he had every opportunity to request and receive overnight or more extended visitation.”
On appeal, the father contends (1) that a parent cannot be deprived of custody of his child in favor of a non-parent without clear and convincing proof that he is unfit, (2) that a parent cannot be deprived of all rights to his child without clear and convincing proof that he is unfit or that the exercise of his parental rights is contrary to the child’s best interests, and (3) that a consent judgment of dependency cannot deprive a parent of a subsequent right of custody without proof of his unfitness or misconduct.
This has become a “battle” between the father and the grandparents to gain custody of the child. The battle, however, is not a true battle. Even though the grandfather had petitioned for custody of the child, he testified that the child should be with his father and that the father and the child have a good and loving relationship. We note that, although the grandparents are named as appellees, they have not responded to this appeal.
In a custody contest between a natural parent and a non-parent, the natural parent has a superior right to custody. *595 This right should not be disturbed unless it is in the interests of the child. Ex parte Berryhill, 410 So.2d 416 (Ala.1982). In addition, we have held that the overriding concern in child custody cases is the best interest of the child, Brown v. Alabama Department of Pensions & Security, 473 So.2d 533 (Ala.Civ.App.1985), and that is the standard to be applied where custody has not previously been determined, Ex parte Couch, 521 So.2d 987 (Ala.1988). In the present case, although temporary custody was previously granted to DHR, there was no termination of parental rights or grant of permanent legal custody to the grandparents; therefore, we will apply the best interests rule.
As noted previously, DHR recommended that the child be placed with one of the parents, and the Florida Department recommended that custody be placed with the father. Although the trial court stated in its order that the father had not addressed his problems of communicating with the mother or his present wife, the father testified that he is seeing a psychologist to help him in the area of communication.
In view of the stable home that the father offers the child, the father’s age in comparison to the age of the grandparents, his love for the child and his desire to have custody of the child, and the fact that the grandfather and the Florida Department feel that the child should be with the father, we find that it would be in the best interest of the child to grant custody to the father. We further find that the denial of all rights to the father was plain and palpable error.
Based on the above, we reverse and remand for the court to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
INGRAM, P.J., and ROBERTSON, J., concur.