MOORE, Judge,
concurring in part and concurring in the result in part.
I concur in that aspect of the main opinion discussing the nature of the medical benefits awarded to Margaret Cowart. I concur in the result as to the remaining aspects of the main opinion.

Medical Causation

Before the legislature amended the Alabama Workers’ Compensation Act (“the Act”), § 25-5-1 et seq., Ala.Code 1975, in 1992, the appellate courts of this state reviewed workers’ compensation judgments under the standard of review applicable to petitions for a writ of certiorari. See 2 Terry A. Moore, Alabama Workers’ Compensation § 26:12 (West 1998). Under that standard, factual findings of the trial court would be conclusive on the appellate court if supported by “any evidence,” see Ex parte Sloss-Sheffield Steel & Iron Co., 207 Ala. 219, 221, 92 So. 458, 460 (1922), or “any reasonable view of that evidence.” See Ex parte Eastwood, Foods, Inc., 575 So.2d 91, 93 (Ala.1991). In 1992, the legislature eliminated certiorari review of workers’ compensation judgments, replacing it with review by appeal and providing that factual findings would be sustained only if supported by “substantial evidence.” See § 25-5-81 (e)(2), Ala.Code 1975. Our supreme court later defined “substantial evidence” as it relates to workers’ compensation cases as “ ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 269 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989), and citing § 12 — 21—12(d), Ala. Code 1975).
“It is well settled that when the legislature makes a ‘material change in the language of [an] original act,’ it is ‘presumed to indicate a change in legal rights.’ 1A Norman J. Singer, Statutes and Statutory Construction § 22:30 (6th ed.2002) (footnote omitted). In other words, the ‘amendment of an unambiguous statute indicates an intention to change the law.’ Id. (emphasis added). See State v. Lammie, 164 Ariz. 377, 379, 793 P.2d 134, 136 (Ariz.Ct.App.1990) (“when the legislature amends statutory language, it is presumed that it intends to make a change in existing law’); Matter of Stein, 131 A.D.2d 68, 72, 520 N.Y.S.2d 157, 159 (App.Div.1987) (‘When the Legislature amends a statute, it is presumed that the amendment was made to effect some purpose and make some change in the existing law.... By enacting an amendment of a statute and changing the language thereof, the Legislature is deemed to have intended a material change in the law.... Moreover, a statute will not be held to be a mere reenactment of a prior statute if any other reasonable interpretation is attainable....’), appeal dismissed 72 N.Y.2d 840, 530 N.Y.S.2d 555, 526 N.E.2d 46 (1988).”
Pinigis v. Regions Bank, 977 So.2d 446, 452 (Ala.2007). Based on the foregoing principles, it is apparent that, by changing the standard of review in § 25-5-81(e)(2), the legislature intended to alter the prior law that factual findings would be conclusive if supported by any evidence or any reasonable view of that evidence. The legislature evidently intended that findings of fact must be supported by more than just one reasonable inference from a scintilla of evidence in order to be conclusive on appeal.
Nevertheless, as currently construed by our supreme court, I cannot discern any distinction between the substantial-evidence standard of review contained in § 25-5-81(e)(2) and the old certiorari standard of review. The supreme court has clarified that an appellate court cannot *1068 weigh the evidence, even for the limited purpose of ascertaining its substantiality. See Ex parte Mclnish, Ml So.3d 767 (Ala.2008). Rather, an appellate court must affirm the judgment if the factual findings of the trial court are “reasonably supported” by the evidence, see Ex parte Hayes, 70 So.3d 1211, 1215 (Ala.2011), even if the testimony supporting the factual findings appears self-contradictory or implausible in light of common human experience. See Ex parte Caldwell, 104 So.3d 901 (Ala.2012). By that highly deferential standard of review, it appears to me that an appellate court cannot disturb a finding of fact in a workers’ compensation judgment unless it is totally unsupported by any reasonable inference taken from some shred of evidence in the record, which is essentially identical to the certio-rari standard of review. The lone case from our supreme court that seems to state otherwise is Ex parte Southern Energy Homes, Inc., 873 So.2d 1116 (Ala. 2003). In that case, our supreme court looked at the “ ‘overall substance’ of the evidence” when ascertaining whether Emma Riddle’s testimony purporting to link her back injury to her employment constituted substantial evidence of medical causation. 873 So.2d at 1122 (quoting Ex parte Price, 555 So.2d 1060, 1063 (Ala.1989)). The court further held that, although Riddle’s testimony that she could no longer work constituted “a modicum of evidence” of permanent total disability, 873 So.2d at 1123, it did not amount to substantial evidence in light of the absence of physical restrictions, the unanimous medical opinions that she could return to work, and her documented exaggerated claims of disability. However, that case retains only questionable precedential value given the cases that have been decided since 2003. See Ex parte Caldwell, 104 So.3d at 906-07 (Murdock, J., concurring in the result) (arguing that Ex parte Southern Energy Homes, Inc., should be overruled as an aberration).
Given the manner in which our supreme court has construed our standard of review, I have no choice but to concur that the judgment of the Calhoun Circuit Court (“the trial court”) must be affirmed insofar as it awards Cowart workers’ compensation benefits for her back injury. As weighed by the trial court, see Ex parte Mclnish, supra, the lay and circumstantial evidence, along with the testimony of Dr. James White III, although hardly a paragon of consistency and clarity, is sufficient to support at least a reasonable inference that Cowart’s back condition results from arthritic changes in the joints of her lumbar vertebra that were aggravated by work-related trauma and that her June 2007 injury was a direct and natural consequence of her original compensable injuries. See Ex parte Pike Cwty. Comm’n, 740 So.2d 1080 (Ala.1999). That same evidence may also support an inference that Cowart’s back injury results solely from nonoccupational injuries or the natural aging process, but this court may not reverse a judgment for that reason. See Ex parte Caldwell, supra.

Permanent Total Disability

The case was bifurcated and the trial court limited its initial hearing held in 2007 to the issue regarding the compensability of Cowart’s back injury. Thus, none of the evidence from that hearing was originally admitted for the purpose of establishing Cowart’s disability. At the second hearing, which was conducted in 2012, the trial court adjudicated only the issue of the disability resulting from the back injury. Remarkably, Cowart elected not to attend the hearing, so she did not testify on her own behalf as to the effect of her back injury on her employability. Cowart’s attorney introduced records from the Social Security Administration indicating that *1069 Cowart had been declared disabled, but the trial court concluded that it would not consider that evidence in deciding the disability issue.
Eric Anderson, a licensed professional counselor, testified that no physician had assigned any work restrictions to Cowart as a result of her back injury. Those physicians that had expressed an opinion on the point had returned Cowart to work full duty. Accordingly, from Anderson’s perspective, Cowart did not have any medical limitations that would prevent her from resuming her regular duties, and earning her regular wages, as a nurse. Thus, he opined that she had not sustained any loss of earning capacity, and he assigned her a 0% vocational-disability rating.
Cowart’s attorney cross-examined Anderson. During that cross-examination, Anderson admitted that he had not taken Cowart’s pain into consideration when opining that she could return to work. Anderson testified that he was not qualified to rate pain, but, instead, left that matter to the physicians who he assumed would take pain into account when assigning restrictions to a patient. Anderson conceded that pain could limit employability if it was severe and frequent enough. However, that cross-examination did not elicit any actual evidence that Cowart suffered continuing, unrelenting pain affecting her employability due to her compen-sable back injury.
At the 2012 hearing, the trial court received as an exhibit the transcript and evidence from the November 2007 hearing. In the transcript from the 2007 hearing, Cowart testified that she had had multiple work-related accidents that had resulted in back injuries that had temporarily prevented her from working for several periods between 2004 and 2007, but after which she had eventually resumed full duty, although, she said, she worked with constant pain from April 2007 through June 2007. According to the transcript, after the last accident in June 2007, Co-wart took medical leave, and, at the end of that leave, she returned to work on light duty for about a hour and a half before she was informed that she had to leave. She later received a letter indicating that her employment had ceased. Cowart testified at the 2007 hearing that she was not doing well at that time, but she did not testify that she was unable to work at that time or that her back problem or pain would prevent her from performing all or even some of her regular job duties as she had done up to the time of her June 2007 accident. On application for rehearing, Cowart argues that the trial court considered her testimony from the November 2007 hearing, but she fails to explain how that testimony supports a finding that she is permanently and totally disabled. Co-wart also fails to explain how any of the evidence presented at the November 2007 hearing contradicts Anderson’s testimony that none of the physicians assigned Co-wart any medical impairment or restrictions as a result of her work-related accidents and that she had been returned to work full duty.
In its 2012 posttrial brief, SouthernCare, Inc., in an attempt to prove that Cowart wanted to return to work for Southern-Care, attached an excerpt from a 2011 deposition of Cowart in which Cowart testified that she would have returned to light-duty work in 2007 except for her dismissal. Later, in another part of that excerpt that SouthernCare did not cite to the trial court, Cowart testified that she could not have continued to work full-time light duty in 2007 and that she could not work in a light-duty capacity in 2011. SouthernCare did not offer the deposition excerpt into evidence. Cowart moved to strike other exhibits attached to Southern-Care’s posttrial brief, but she did not move to strike that deposition excerpt. On ap *1070 plication for rehearing, Cowart argues that the deposition excerpt had been entered into evidence and that the deposition excerpt supports the trial court’s finding of permanent total disability.
The record does not support Cowart’s contention that the deposition excerpt had been admitted as evidence. Although evidence may be admitted in a workers’ compensation case with little formality, that evidence generally must be identified and presented during the hearing. See generally Jack’s Rest. v. Tumbow, 674 So.2d 573 (Ala.Civ.App.1995). In this case, SouthernCare did not identify and present the deposition excerpt during the hearing. Rather, the record indicates that South-ernCare cited a portion of the excerpt in its posttrial brief after the conclusion of the hearing and after both sides had rested. Section 25-5-88, Ala.Code 1975, provides that workers’ compensation hearings “shall proceed in accordance with ... the same rules and statutes as govern civil actions.” Section 6-8-103, Ala.Code 1975, allows a case to be reopened to admit additional evidence “at any time before the conclusion of the argument.” Southern-Care, however, did not expressly request that the trial court reopen the evidence to include the deposition excerpt. Perhaps by attaching the deposition excerpt to its posttrial brief SouthernCare impliedly moved the trial court to reopen the case to consider that evidence, if that is possible; however, nothing in the record shows that the trial court did, in fact, grant such a motion. The trial court set out in detail the evidence upon which it had relied in making its findings, even citing to the exhibits in the record and making a special bold note that it had considered Cowart’s testimony from the November 2007 hearing, but it did not, in any fashion, refer to the 2011 deposition excerpt, thereby indicating that it had not considered that testimony to be part of the evidence. Moreover, until her brief to this court, Cowart never cited the portion of the deposition excerpt deemed favorable to her as part of the evidence supporting her claim of permanent total disability.
Ultimately, due to the bifurcated nature of the proceedings and the decision of Co-wart not to attend the second hearing, the record contains no evidence indicating that Cowart sustained any permanent loss of earning capacity due to her compensable back injury. Even under the deferential standard of review set out above, the judgment of the trial court must be reversed. I would go further than the main opinion, however, and hold that the trial court must enter a judgment not only vacating the permanent-total-disability award, but denying any permanent-disability benefits altogether. Without evidence of a permanent loss of earning capacity, Cowart cannot recover any permanent-disability benefits for her back injury. See Brown v. Champion Int’l Corp., 693 So.2d 24 (Ala. Civ.App.1996) (holding that, in absence of evidence that neck injury caused loss of earning capacity, circuit court did not err in denying claim for permanent-disability benefits).